EMILY L. DEVILLE
MAE BOWEN
Environmental Enforcement Section
Energy and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Emily.DeVille@usdoj.gov
Mae.Bowen@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CROW TRIBE OF MONTANA and CROW PUBLIC UTILITIES<br><br>Defendants | Civil Action No.<br><br>**CV-26-111-BLG-TJC** |

# COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and acting on behalf of the Administrator of the United States

Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought against the Crow Tribe of Montana ("Crow Tribe" or "Tribe") and the Crow Public Utilities ("CPU") (collectively, "Defendants") to obtain injunctive relief and civil penalties pursuant to Sections 1414 and 1431 of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§ 300g-3(b) and 300i; Sections 309(a), (b), and (d), and 504 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1319(a), (b), and (d) and 1364(a); and Section 7003(a) of the Solid Waste Disposal Act, as amended by and hereafter referred to as the Resource Conservation and Recovery Act ("RCRA"), and subsequent amendments, 42 U.S.C. § 6973(a), for violations of administrative orders and numerous violations of these statutes and their implementing regulations. More specifically, this civil action seeks to require Defendants to perform corrective measures to protect the environment and health of consumers served by Treatment Plant 2 of the Crow Agency Public Water System ("Crow Agency PWS"), Pryor Public Water System ("Pryor PWS"), and Wyola Public Water System ("Wyola PWS"); Crow Agency Wastewater Treatment Facility ("Crow Agency WWTF"), Pryor Wastewater Treatment Facility ("Pryor WWTF"), and Wyola Wastewater Treatment Facility ("Wyola WWTF"); and various solid waste facilities, including

the Crow Agency, Pryor, Wyola, St. Xavier, and Lodge Grass solid waste transfer stations and open dumps (collectively, the "Tribal Utilities") on the Crow Indian Reservation ("Reservation"). Additionally, this action seeks to require Defendants to achieve and maintain compliance with the SDWA, CWA, RCRA, their respective implementing regulations, the September 11, 2019 Administrative Orders for the Pryor and Wyola PWSs (Dkt. No. SDWA-08-2019-0043 and Dkt. No. SDWA-08-2019-0044) and the October 29, 2018 Administrative Order for the Crow Agency WWTF (Dkt. No. CWA-08-2019-0001) issued by EPA, pursuant to the authority of Section 1414 of the SDWA, 42 U.S.C. § 300g-3(g), and Section 309 of the CWA, 33 U.S.C. § 1319(a)(3).

## JURISDICTION, VENUE, AND AUTHORITY

2. This Court has jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, Sections 1414 and 1431(a) of the SDWA, 42 U.S.C. §§ 300g-3 and 300i, Sections 309(b) and 504(a) of the CWA, 33 U.S.C. §§ 1319(b) and 1364(a), and under Section 7003 of RCRA, 42 U.S.C. § 6973.

3. This Court has jurisdiction over Defendants because Defendants are each a "person" within the meaning of Section 1401(12) of the SDWA, 42 U.S.C. § 300f(12); Section 502(5) of the CWA, 33 U.S.C. § 1362(5); and Section 1004(15) of RCRA, 42 U.S.C. § 6903(15), for purposes of federal enforcement.

4. Venue is proper in the District of Montana under 28 U.S.C. §§ 1391(b) and 1395(a), as well as SDWA Sections 1414(b) and (g)(3)(C) and 1431(a), 42 U.S.C. §§ 300g-3(b) and (g)(3)(C), and 300i(a); CWA Sections 309(b) and (d), and 504, 33 U.S.C. §§ 1319(b) and (d), and 1364; and RCRA Section 7003(a), 42 U.S.C. § 6973(a), because it is the judicial district where Defendants are located, where a substantial part of the events or omissions giving rise to the claims occurred, and where the alleged violations occurred.

5. Authority to bring this civil action on behalf of the United States is vested in the Attorney General of the United States pursuant to Section 1450(f) of the SDWA, 42 U.S.C. § 300j-9(f); Section 506 of the CWA, 33 U.S.C. § 1366; and 28 U.S.C. §§ 516 and 519.

6. EPA is the authorized agency to enforce the CWA and RCRA programs and has primary enforcement responsibility for the SDWA public water supply protection program within the Reservation. No other governmental authority has applied for and been approved to administer the CWA, RCRA, or SDWA programs on the Reservation.

## DEFENDANTS

7. The Crow Tribe is a federally recognized Indian tribal government and is therefore, an "Indian Tribe" within the meaning of Section 1401(14) of the SDWA, 42 U.S.C. § 300f(14). The Crow Tribe is governed by the Crow Tribe

Executive Branch, consisting of a Chairman, Vice-Chairman, Secretary, and Vice-Secretary.

8. The CPU was established in 2024 by the Crow Tribal Legislature to continuously provide safe and reliable drinking water, wastewater, and solid waste services within the Reservation. The CPU was established through the amendment of Title 22 of the Crow Tribe Law and Order Code, and replaced the Apsáalooke Water and Waste Water Authority ("AWWWA"). The CPU is managed by a five member Utility Board.

9. AWWWA was established in 2004 pursuant to Crow Legislative Bill ("CLB") 04-10 and was the public body previously organized for "[r]emedying unsafe and unsanitary water, sewer and other related facilities in the towns and communities within the Crow Indian Reservation . . . ." The revised Title 22 established the CPU and, among other things, rescinded CLB 04-10 – the tribal legislation establishing AWWWA.

10. Upon information and belief, the CPU is the successor in interest to AWWWA and has assumed AWWWA's obligations as it relates to operation of the Tribal Utilities.

11. Defendants are each a "municipality" as defined by SDWA Section 1401(10),

42 U.S.C. § 300f(10); CWA Section 502(4), 33 U.S.C. § 1362(4); and RCRA Section 1004(13), 42 U.S.C. § 6903(13), and "municipalities" are in turn a "person" as defined in SDWA Section 1401(12), 42 U.S.C. § 300f(12), and 40 C.F.R. § 141.2; CWA Section 502(5), 33 U.S.C. § 1362(5); RCRA Section 1004(15), 42 U.S.C. § 6903(15), for federal enforcement purposes.

12. As the owner and/or operator of the Crow Agency PWS, Pryor PWS, and Wyola PWS (collectively, the "Crow Public Water Systems"), Federal Identification Numbers 083090011, 3090012, and 3090014, each Defendant is a "supplier of water" as that term is defined in Section 1401(5) of the SDWA, 42 U.S.C. § 300f(5), and 40 C.F.R. § 141.2. Each of the Crow Public Water Systems is a "public water system" as that term is defined in Section 1401(4), 42 U.S.C. § 300f(4), and 40 C.F.R. § 141.2. As provided in Section 1411 of the SDWA, 42 U.S.C. § 300g, Defendants are therefore required to comply with the SDWA and the National Primary Drinking Water Regulations ("NPDWR") at 40 C.F.R. Part 141.

13. Defendants own and/or operate, the Crow Agency WWTF, Pryor WWTF, and Wyola WWTF (collectively, the "Wastewater Treatment Facilities" or "WWTFs") all located in Big Horn County, Montana, within the boundaries of the Reservation.

14. Defendants own and/or operate various solid waste facilitates, including five active municipal waste transfer stations, Crow Agency, Pryor, St. Xavier, Wyola, and Lodge Grass and one closed municipal waste transfer station, Fort Smith, (collectively, the "Transfer Stations"), all located in Big Horn County, Montana, within the boundaries of the Reservation.

## STATUTORY AND REGULATORY FRAMEWORK

### Safe Drinking Water Act

15. Pursuant to Section 1412 of the SDWA, 42 U.S.C. § 300g-1, EPA promulgated the NPDWR at 40 C.F.R. Part 141 to establish contaminant limitations, monitoring requirements, public notification requirements, and other requirements for regulated drinking water systems. *See* 42 U.S.C. § 300f(1).

16. The NPDWR require that each owner or operator of a public water system must give a public notice for all NPDWR violations and for other situations, including "violations or situations with significant potential to have serious adverse effects on human health as a result of short-term exposure, as determined by the primacy agency either in its regulations or on a case-by-case basis." 40 C.F.R. § 141.202(a)(9). The NPDWR separate violations into one of three tiers of public notice requirements.

17. For Tier 1 violations, including maximum contaminant levels such as *E. coli*, a public water system must (1) provide a public notice as soon as practical

but no later than 24 hours after the system learns of the violation; (2) initiate consultation with the primacy agency as soon as practical, but no later than 24 hours after the public water system learns of the violation or situation, to determine additional public notice requirements; and (3) comply with any additional public notification requirements that are established as a result of the consultation with the primacy agency. 40 C.F.R. § 141.202(b).

18. For Tier 2 violations, including failure to take corrective action after a significant deficiency has been identified, a public water system must provide the public notice as soon as practical, but no later than 30 days after the system learns of the violation. If the public notice is posted, the notice must remain in place for as long as the violation or situation persists, but in no case for less than seven days, even if the violation or situation is resolved. The public water system must repeat the notice every three months as long as the violation or situation persists. 40 C.F.R. § 141.203.

19. For Tier 3 violations, including monitoring and testing procedure requirements, a public water system must provide the public notice not later than one year after the system learns of the violation or situation. Following the initial notice, the system must repeat the notice annually as long as the violation or situation persists. 40 C.F.R. § 141.204.

20. EPA has primary enforcement responsibility for the SDWA on the Reservation, as the Tribe has not applied for or been approved to implement the SDWA, *see* 42 U.S.C. §§ 300g-3(a)(2), 300j-11, and the State of Montana is not authorized to do so on the Reservation.

21. EPA is authorized to bring a civil judicial action to require compliance with any applicable requirement under the SDWA or with an administrative order issued by EPA as well as to seek civil penalties for such violations. 42 U.S.C. § 300g-3(b).

22. EPA is also authorized to commence a civil action and/or issue an order pursuant to the emergency power provisions of Section 1431 of the SDWA, 42 U.S.C. § 300i(a), when it receives "information that a contaminant which is present in or is likely to enter a public water system . . . which may present an imminent and substantial endangerment to the health of persons, and that appropriate State and local authorities have not acted to protect the health of such persons[.]"

23. Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), provides that EPA may seek civil penalties not to exceed $71,545 for each day in which a violation of an applicable requirement of the SDWA or an order issued by EPA under Section 1414 occurs after November 2, 2015, where penalties are assessed

on or after January 8, 2025. *See* Debt Collection Improvement Act of 1996, Pub. L. No. 101-134, 40 C.F.R. § 19.4, 90 Fed. Reg. 1375, 1377 (January 8, 2025).

**Clean Water Act**

24. The CWA is designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA establishes a national goal to eliminate the discharge of pollutants into navigable waters. 33 U.S.C. § 1251(a)(1).

25. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person except as authorized by a National Pollutant Discharge Elimination ("NPDES") permit issued by EPA or an authorized State pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

26. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source[.]"

27. Section 502(6) of the CWA, 33 U.S.C. § 1362(6), includes "sewage" in the definition of "pollutant."

28. Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" as "any discernable, confined and discrete conveyance . . . from which pollutants are or may be discharged."

29. Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as

the "waters of the United States, including the territorial seas."

30. Under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), EPA may issue NPDES permits to authorize the discharge of pollutants into waters of the United States, subject to the conditions and limitations set forth in such permits.

31. Section 402(a)(2) of the CWA, 33 U.S.C. § 1342(a)(2), directs EPA to prescribe conditions, including effluent limitations, for NPDES permits to assure compliance with the requirements of the CWA.

32. Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters.

33. Pursuant to 40 C.F.R. § 122.41, a NPDES permit must include all the conditions in 40 C.F.R. § 122.41.

34. Pursuant to 40 C.F.R. § 122.41(a), a permittee must comply with all conditions of its NPDES permit.

35. Section 309(a)(3) of the CWA, 33 U.S.C. § 1319(a)(3), authorizes EPA to issue compliance orders whenever it finds that any person has violated Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation implementing such Section in a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

36. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes EPA to commence a civil action to obtain appropriate relief, including a permanent or temporary injunction, when any person violates, *inter alia*, Section 301 of the CWA, 33 U.S.C. §§ 1311, violates any permit condition or limitation in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, or violates any order issued by EPA pursuant to Section 309(a) of the CWA, 33 U.S.C. § 1319(a).

37. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, the violations described in Paragraph 36 shall also be subject to a civil penalty not to exceed $68,445 per day for each violation that occurred after November 2, 2015, where penalties are assessed on or after January 8, 2025. *See* Debt Collection Improvement Act of 1996, Pub. L. No. 101-134, 40 C.F.R. § 19.4, 90 Fed. Reg. 1375, 1377 (January 8, 2025).

38. The emergency powers provision in Section 504(a) of the CWA, 33 U.S.C. § 1364(a), provides, in relevant part:

> Notwithstanding any other provision of this chapter, the Administrator upon receipt of evidence that a pollution source or combination of sources is presenting an imminent and substantial endangerment to the health of persons . . . may bring suit on behalf of the United States in the appropriate district court to immediately restrain any person causing or contributing to the alleged pollution to stop the discharge of pollutants causing or contributing to such pollution or to take such other action as may be necessary.

### Solid Waste Disposal Act, As Amended By Resource Conservation and Recovery Act

39. One of the stated objectives of RCRA is, "to promote the protection of health and the environment and to conserve valuable material and energy resources by . . . prohibiting future open dumping on the land and requiring the conversion of existing open dumps to facilities which do not pose a danger to the environment or to health." 42 U.S.C. § 6902(a)(3).

40. Section 4005(a) of RCRA, 42 U.S.C. § 6945(a), prohibits any solid waste management practice or disposal of solid waste or hazardous waste that constitutes an open dumping.

41. Section 7003(a) of RCRA, 42 U.S.C. § 6973(a), authorizes EPA, "upon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment," to bring suit against any person who has contributed or who is contributing to such handling, storage, treatment, transportation, or disposal of any solid waste or hazardous waste.

## GENERAL ALLEGATIONS

42. The Reservation is located in parts of Big Horn, Yellowstone, and Treasure counties in south-central Montana.

43. Defendants own and/or operate three public drinking water systems, three wastewater treatment facilities, and various solid waste transfer stations, all located within the boundaries of the Reservation. Defendants are responsible for providing public drinking water, wastewater treatment services, and solid waste disposal.

**Defendants' Public Water Systems**

44. The Crow Agency PWS is supplied by surface water from the Little Bighorn River. The Crow Agency PWS supplies drinking water for human consumption and serves approximately 1,657 year-round residents with 435 service connections in Crow Agency, Montana. The entirety of the public water system in Crow Agency consists of two treatment plants: Crow Agency Treatment Plant 2 is owned and/or operated by Defendants, and Crow Agency Treatment Plant 1 is operated by the Bureau of Indian Affairs. This Complaint addresses the Crow Agency Treatment Plant 2 only, referred to throughout as the Crow Agency PWS.

45. The Crow Agency PWS is a "public water system" and a "community water system" as defined in 40 C.F.R. § 141.2 and Section 1401(4) and (15) of the SDWA, 42 U.S.C. § 300f(4) and (15).

46. The Pryor PWS is supplied by groundwater accessed via three wells and provides water to the public for human consumption through pipes or other

constructed conveyances. The Pryor PWS serves approximately 406 year-round residents with 98 service connections.

47. The Pryor PWS is a “public water system” and a “community water system” as defined in 40 C.F.R. § 141.2 and Section 1401(4) and (15) of the SDWA, 42 U.S.C. § 300f(4) and (15).

48. The Wyola PWS is supplied by groundwater accessed via two wells and provides water to the public for human consumption through pipes or other conveyances. The Wyola PWS serves approximately 261 year-round residents with 64 service connections.

49. The Wyola PWS is a “public water system” and a “community water system” as defined in 40 C.F.R. § 141.2 and Section 1401(4) and (15) of the SDWA, 42 U.S.C. § 300f(4) and (15).

50. Each Defendant is a supplier of water within the meaning of Section 1401(5) of the SDWA, 42 U.S.C. § 300(f)(5) and 40 C.F.R. § 141.2.

**Defendants’ Wastewater Treatment Facilities**

51. The Crow Agency WWTF, sometimes referred to as the Crow Agency Wastewater Lagoon, comprises a collection system with three lift stations, a four-cell aerated lagoon, and ultraviolet disinfection. Crow Agency WWTF effluent is intended to be discharged into the Little Bighorn River after ultraviolet disinfection. The Little Bighorn River is a tributary of the Bighorn River, both

originating in Wyoming and flowing north through the Reservation in Montana. The Bighorn River is listed by the Omaha District of the U.S. Army Corps of Engineers as navigable-in-fact or a traditionally navigable water.

52. The Little Bighorn River and Bighorn River are "waters of the United States" and "navigable waters" within the meaning of the CWA, 33 U.S.C. § 1251 *et seq*.

53. The Crow Agency WWTF has one discharge outfall, and it is a "point source" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

54. On September 14, 2015, the NPDES permit for the Crow Agency WWTF expired and Defendants failed to timely submit an application for renewal.

55. Defendants operated the Crow Agency WWTF without a NPDES permit from September 14, 2015 until a new permit was issued, effective October 19, 2022.

56. Effective October 19, 2022, EPA granted the Crow Agency WWTF coverage under the EPA Region 8 General Permit for Wastewater Lagoon Systems in Indian Country (General NPDES Permit No. MTG 589###; facility-specific NPDES ID MTG589009), with an expiration date of March 31, 2027.

57. NPDES Permit No. MTG589009 authorizes discharges from the Crow Agency WWTF into the Little Bighorn River, subject to effluent limitations and other conditions stated in the permit.

58. The Pryor WWTF is comprised of a gravity flow collection system and a multi-cell facultative lagoon that is typically non-discharging.

59. Pryor Creek is a tributary of the Yellowstone River, which flows into the Missouri River. The Yellowstone River and Missouri River are listed by the Omaha District of the U.S. Army Corps of Engineers as navigable-in-fact or traditionally navigable waters.

60. Pryor Creek, the Yellowstone River, and the Missouri River are "waters of the United States" and "navigable waters" within the meaning of the CWA, 33 U.S.C. § 1251 *et seq.*

61. The Pryor WWTF has the potential to discharge to, and under conditions of malfunction has discharged to, Pryor Creek.

62. The Wyola WWTF is comprised of a collection system with one lift station and a one-cell baffled facultative lagoon that is typically non-discharging. The lift station receives all sewage from the collection system and conveys it into the lagoon.

**Defendants' Solid Waste Facilities**

63. Defendants' Transfer Stations include five active municipal waste transfer stations, Crow Agency, Pryor, St. Xavier, Wyola, and Lodge Grass and one closed municipal waste transfer station, Fort Smith, all within the boundaries of the Reservation. Defendants have reportedly closed the St. Xavier transfer

station; however, EPA has received reports that open dumping of solid waste continues there.

64. Wastes handled at the Transfer Stations and other locations, including open dumps, across the Reservation are “solid waste” as defined in Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

65. The Transfer Stations are designed to function as temporary staging locations where waste disposal service providers can pick up waste stored in 40-yard dumpsters for transport to a sanitary landfill.

66. There are no curbside solid waste services on the Reservation.

67. Defendants contract a disposal service provider to collect waste from the Transfer Stations. Additionally, Defendants’ employees sometimes haul waste to a sanitary landfill.

68. Excess waste exists and continues to accumulate around the Transfer Stations.

69. In addition, EPA has received reports of open dumping on at least two other areas of the Reservation, which have been episodically lit on fire.

70. Uncontrolled waste handling and burning at open dumps presents environmental and public health risks, increasing the likelihood of contaminants spreading into the environment in an uncontrolled manner, as well as the potential for the proliferation of disease through vectors such as rodents, flies, and

mosquitoes. Open dumps also have the potential to contaminate surface water and ground water, including waters which may be sources of drinking water. Uncontrolled burning of such wastes causes air pollution, and threats of harm to persons inhaling the smoke.

**Efforts to Obtain Compliance and Violations**

<u>Public Drinking Water Systems</u>

71. Despite EPA's continued technical assistance efforts; operation, maintenance, and managerial issues have resulted in persistent non-compliance with the SDWA and NPDWR at the Crow Public Water Systems, leading to threats to human health and the environment.

72. Since 2011, EPA has issued six emergency administrative orders in response to imminent and substantial endangerment situations and two administrative orders across the three Crow Public Water Systems. EPA has also issued dozens of Notices of Violation for each of the Crow Public Water Systems.

73. On May 25, 2011, EPA issued an emergency order for the Crow Agency PWS in response to a loss of pressure in the distribution system. The emergency order required issuance of a boil water advisory, distribution of alternative potable water for system users, public notice, disinfection, and testing for contamination.

74. On July 18, 2011, the tanks at the Crow Agency PWS ran out of water and the distribution system lost pressure again. EPA subsequently reinstated the requirements from the May 25, 2011 emergency order.

75. On September 30, 2016, EPA issued an emergency order for the Crow Agency PWS in response to discovering that the turbidimeter was not operational and could not ensure drinking water was adequately being treated to remove the *E. coli* and Cryptosporidium known to be present in the source water. EPA also discovered that the chlorine analyzer for the plant's produced water was not operational and surface water entering the plant for treatment had not been chlorinated for an unknown period. The emergency order required correction of the treatment issues, issuance of a boil water advisory, distribution of alternative potable water for system users, public notice, disinfection, and testing for contamination.

76. On October 5, 2017, EPA issued an emergency order for the Crow Agency PWS in response to intruders causing damage to the system's gas chlorination system and chemical plant feed components that resulted in an unknown amount of potentially contaminated drinking water. The emergency order required repair of the damaged components, issuance of a "do not use" water advisory, distribution of alternative potable water for system users, public notice, disinfection, and testing for contamination.

77. On June 5, 2019, EPA issued an emergency order for the Wyola PWS in response to monitoring results that total coliform and *E. coli* were present in the drinking water following malfunctioning of the chlorination and ultraviolet treatment systems. The June 5, 2019 emergency order required correction of the treatment issues, issuance of a boil water advisory, distribution of alternative potable water for system users, a public notice, disinfection, and follow up testing for contamination.

78. On July 17, 2019 and August 20, 2020, EPA issued emergency orders for the Wyola PWS in response to pressure losses in the distribution system. The July 17, 2019 and August 18, 2020 emergency orders required issuance of a boil water advisory, distribution of alternative potable water for system users, public notice, disinfection, and testing for contamination.

79. EPA closed each of the six emergency orders following completion of the required actions.

80. On September 11, 2019, EPA issued administrative orders for the Pryor and Wyola PWSs due to a failure to conduct required monitoring and reporting, failure to correct significant deficiencies, and failure to issue public notices. The administrative orders required, among other things, monitoring and reporting for nitrate and total coliform bacteria, correction of significant deficiencies, and providing public notices.

81. To date, Defendants have not complied with all requirements of the September 11, 2019 Administrative Orders issued for the Pryor and Wyola PWSs.

82. In addition to the outstanding non-compliance with the September 11, 2019 Administrative Orders, the three Crow Public Water Systems have continued to experience systemic non-compliance, including repeated water pressure loss and failures to monitor for contaminants, to have appropriately certified operators, to perform proper operation and maintenance, to provide public notices, and to provide notices to EPA. Defendants have made some progress addressing specific issues identified but in multiple instances have lapsed back into non-compliance on those same issues.

Wastewater Treatment Facilities

83. For over a decade, all three WWTFs have experienced systemic non-compliance with the CWA, including raw sewage overflows, unpermitted discharges, and failure to conduct proper operation, maintenance, monitoring, and reporting.

84. From September 15, 2015, through October 18, 2022, the Crow Agency WWTF lagoon discharged partially treated or untreated sewage to the Little Bighorn River without a NPDES permit.

85. Defendants also failed to respond to a 2018 EPA information request, submitted late or incomplete Discharge Monitoring Reports (“DMRs”) for the

Crow Agency WWTF for twenty-seven monitoring periods from November 2022 to January 2025, and failed to submit DMRs for the Crow Agency WWTF for thirteen monitoring periods from February 2025 to February 2026 .

86. On October 29, 2018, EPA issued a Findings of Violation and Order for Compliance ("October 2018 Administrative Order") based on violations of Sections 301 and 308 of the CWA, 33 U.S.C. §§ 1311 and 1318, at the Crow Agency Wastewater Lagoon. The October 2018 Administrative Order required, among other things, that Defendants: apply for discharge authorization from the WWTF under a new NPDES permit; notify EPA within 24 hours of any discharges, overflows, or bypasses from the WWTF of raw sewage or partially treated sewage; submit monthly effluent monitoring results; implement a plan and schedule to complete outstanding physical repairs and replacement of deficient WWTF components; implement an operation and maintenance plan, including an overflow and emergency response plan; and upon the effective date of a new NPDES permit for the WWTF, comply with all requirements of the permit.

87. To date, Defendants have not complied with all requirements of the October 2018 Administrative Order for the Crow Agency WWTF.

## Solid Waste

88. For the past 10 years, EPA Region 8 has provided Defendants with technical assistance on solid waste issues to help them come into compliance with RCRA. Yet uncontrolled waste handling and open dumping conditions persist.

89. Prior to the enactment of the revised Title 22 on April 23, 2024, Defendant Crow Tribe did not have a solid waste code or solid waste enforcement mechanism.

90. The revised Title 22 includes solid waste provisions and provides the Crow Environmental Protection Agency with the authority to "adopt regulations, policies, procedures, and fees necessary for enforcement of [Title 22.]"

91. The Crow Environmental Protection Agency has not promulgated regulations to enforce the solid waste provisions in the revised Title 22.

92. The enactment of the revised Title 22 reflects some progress towards ensuring proper handling, treatment, and disposal of solid waste on the Reservation; however, open dumping conditions persist, including at and around the Transfer Stations and at open dumps across the Reservation.

93. A February 2025 Crow Tribe Solid Waste Program Rate Study ("Rate Study"), conducted by ICF in collaboration with EPA and the Crow Tribe, found existing service levels at the active Transfer Stations insufficient and noted that

open dumping occurs regularly at the Transfer Stations outside of the designated dumpsters and in nearby areas.

94. The Rate Study estimated that the amount of solid waste transported from the Transfer Stations to a landfill in 2024 was about one-tenth of the solid waste generated.

95. Defendants' non-compliance with RCRA can be attributed to multiple continuing factors, including inadequate waste hauling service levels, the lack of regulations to implement enforcement of the solid waste provisions in the revised Title 22, and the lack of a comprehensive solid waste management program.

**FIRST CLAIM FOR RELIEF**
**(Violation of the September 11, 2019 Administrative Orders)**

96. The allegations in Paragraphs 1 through 95 above are re-alleged and incorporated herein by reference.

97. On September 11, 2019, EPA issued two Administrative Orders to Defendant Crow Tribe and AWWWA for the Pryor PWS and Wyola PWS, respectively.

98. On numerous occasions, Defendants failed to timely comply with the monitoring, corrective action, and public notice provisions of the September 11, 2019 Administrative Orders.

99. Unless restrained by an order of this Court, these and similar violations are likely to continue.

100. As provided in Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), the United States is entitled to bring a claim for injunctive relief from Defendants' violations of the September 11, 2019 Administrative Orders related to the Pryor PWS and Wyola PWS.

101. As provided in Section 1414 of the SDWA, 42 U.S.C. § 300g-3(g)(3)(A), violations of the September 11, 2019 Administrative Orders related to the Pryor PWS and Wyola PWS, as set forth above, subject Defendants to civil penalties not to exceed the amount specified in Paragraph 23.

## SECOND CLAIM FOR RELIEF
### (Failure to Monitor and Report Contaminants in Drinking Water at Crow Agency PWS)

102. The allegations in Paragraphs 1 through 95 above are re-alleged and incorporated herein by reference.

103. As detailed in Appendix A, Defendants failed to submit turbidity monitoring results to EPA for the Crow Agency PWS in violation of 40 C.F.R. § 141.75(b).

104. As detailed in Appendix A, Defendants failed to comply with the Disinfectants and Disinfection Byproducts Rule reporting and recordkeeping requirements for the Crow Agency PWS in violation of 40 C.F.R. § 141.134(d).

105. As detailed in Appendix A, Defendants failed to comply with the Stage 1 Disinfection Byproducts Rule by failing to perform adequate disinfection byproduct ("DBP") precursor removal in violation of 40 C.F.R. § 141.135.

106. As detailed in Appendix A, Defendants failed to comply with the Consumer Confidence Rule at the Crow Agency PWS by failing to submit the Consumer Confidence Report in violation of 40 C.F.R. §§ 141.151-155.

107. As detailed in Appendix A, Defendants failed to comply with the Lead and Copper Rule at the Crow Agency PWS by failing to submit the Lead Consumer Notice in violation of 40 C.F.R. § 141.90.

108. As detailed in Appendix A, Defendants failed to comply and remain out of compliance with recordkeeping requirements for Crow Agency PWS in violation of 40 C.F.R. § 141.571(a).

109. The acts or omissions referred to in Paragraphs 103-108 constitute violations of the applicable requirements under the SDWA and NPDWR. Unless restrained by an order of this Court, these and similar violations are likely to continue.

110. As provided in Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), the United States is entitled to bring a claim for injunctive relief from Defendants' violations of monitoring and reporting requirements of the SDWA and NPDWR at Crow Agency PWS, as set forth above.

111. As provided in Section 1414 of the SDWA, 42 U.S.C. § 300g-3(g)(3)(A), violations, as set forth above, of monitoring and reporting requirements of the SDWA and NPDWR at Crow Agency PWS subject Defendants to civil penalties not to exceed the amount specified in Paragraph 23.

**THIRD CLAIM FOR RELIEF**
**(Failure to Address Deficiencies at the Crow Agency PWS)**

112. The allegations in Paragraphs 1 through 95 above are re-alleged and incorporated herein by reference.

113. As detailed in Appendix A, Defendants failed to address deficiencies at the Crow Agency PWS, in violation of the Surface Water Treatment Rule, 40 C.F.R. § 141.723(d).

114. The acts or omissions referred to in Paragraph 113 constitute violations of the applicable requirements under the SDWA and NPDWR.

115. Unless restrained by an order of this Court, these and similar violations are likely to continue.

116. As provided in Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), the United States is entitled to bring a claim for injunctive relief from Defendants' violations of the Surface Water Treatment Rule at Crow Agency PWS.

117. As provided in Section 1414 of the SDWA, 42 U.S.C. § 300g-3(g)(3)(A), violations, as set forth above, of the Surface Water Treatment Rule at

Crow Agency PWS subject Defendants to civil penalties not to exceed the amount specified in Paragraph 23.

## FOURTH CLAIM FOR RELIEF
**(Failure to Monitor and Report Contaminants in Drinking Water at the Pryor PWS)**

118. The allegations in Paragraphs 1 through 95 above are re-alleged and incorporated herein by reference.

119. As detailed in Appendix B, Defendants failed to comply with the Consumer Confidence Rule at the Pryor PWS by failing to submit the Consumer Confidence Report in violation of 40 C.F.R. §§ 141.151-155.

120. As detailed in Appendix B, Defendants failed to conduct follow-up or routine lead and copper monitoring at the Pryor PWS in violation of 40 C.F.R. §§ 141.80-141.91.

121. As detailed in Appendix B, Defendants failed to comply with the Lead and Copper Rule at the Pryor PWS by failing to submit the Lead Consumer Notice in violation of 40 C.F.R. § 141.85(d).

122. As detailed in Appendix B, Defendants failed to monitor and report for a variety of contaminants at the Pryor PWS, including chlorine, total trihalomethanes ("TTHM"), and Total Haloacetic Acids, in violation of 40 C.F.R. §§ 141.132(c)(1), 141.134, and 141.621.

123. As detailed in Appendix B, Defendants failed to monitor Total Coliform at the Pryor PWS in violation of 40 C.F.R. §§ 141.854-141.858.

124. As detailed in Appendix B, Defendants failed to monitor for a variety of contaminants at the Pryor PWS, including synthetic organic chemicals, inorganic chemicals, volatile organic chemicals, radionuclides, and nitrate, in violation of 40 C.F.R. §§ 141.23, 141.24, 141.26, and 141.31.

125. As detailed in Appendix B, Defendants failed to monitor for Total Coliform and *E. coli* at the Pryor PWS in violation of 40 C.F.R. § 141 Subpart S.

126. The acts or omissions referred to in Paragraphs 119-125 constitute violations of the applicable requirements under the SDWA and NPDWR.

127. Unless restrained by an order of this Court, these and similar violations are likely to continue.

128. As provided in Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), the United States is entitled to bring a claim for injunctive relief from Defendants' violations of monitoring and reporting requirements of the SDWA and NPDWR at Pryor PWS, as set forth above.

129. As provided in Section 1414 of the SDWA, 42 U.S.C. § 300g-3(g)(3)(A), violations, as set forth above, of monitoring and reporting requirements of the SDWA and NPDWR at Pryor PWS subject Defendants to civil penalties not to exceed the amount specified in Paragraph 23.

**FIFTH CLAIM FOR RELIEF**
**(Failure to Address Deficiencies at the Pryor PWS)**

130. The allegations in Paragraphs 1 through 95 above are re-alleged and incorporated herein by reference.

131. As detailed in Appendix B, Defendants failed to address deficiencies at the Pryor PWS, in violation of the Ground Water Rule, 40 C.F.R. § 141.404(a).

132. The acts or omissions referred to in Paragraph 131 constitute violations of the applicable requirements under the SDWA and NPDWR.

133. Unless restrained by an order of this Court, these and similar violations are likely to continue.

134. As provided in Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), the United States is entitled to bring a claim for injunctive relief from Defendants' violations of the Ground Water Rule at Pryor PWS.

135. As provided in Section 1414 of the SDWA, 42 U.S.C. § 300g-3(g)(3)(A), violations, as set forth above, of the Ground Water Rule at Pryor PWS subject Defendants to civil penalties not to exceed the amount specified in Paragraph 23.

**SIXTH CLAIM FOR RELIEF**
**(Failure to Monitor and Report Contaminants in Drinking Water at the Wyola PWS)**

136. The allegations in Paragraphs 1 through 95 above are re-alleged and incorporated herein by reference.

137. As detailed in Appendix C, Defendants failed to comply with the Consumer Confidence Rule by failing to submit a Consumer Confidence Report and by submitting an inadequate Consumer Confidence Report for the Wyola PWS in violation of 40 C.F.R. §§ 141.151-155.

138. As detailed in Appendix C, Defendants failed to comply with the Lead and Copper Rule by failing to conduct follow-up or routine monitoring and reporting for lead and copper at the Wyola PWS in violation of 40 C.F.R. §§ 141.80-141.91.

139. As detailed in Appendix C, Defendants failed to comply with the Lead Consumer Notice requirements at the Wyola PWS in violation of 40 C.F.R. § 141.85(d).

140. As detailed in Appendix C, Defendants exceeded the maximum contaminant level for *E. coli* at the Wyola PWS in violation of 40 C.F.R. § 141.860.

141. As detailed in Appendix C, Defendants failed to monitor for Total Coliform at the Wyola PWS in violation of 40 C.F.R. §§ 141.854-141.858.

142. As detailed in Appendix C, Defendants failed to monitor and report for a variety of contaminants at the Wyola PWS, including chlorine, TTHM, and Total Haloacetic Acids, in violation of 40 C.F.R. §§ 141.132(c)(1), 141.134, and 141.621.

143. As detailed in Appendix C, on numerous occasions, Defendants failed to monitor for a variety of contaminants at the Wyola PWS, including synthetic organic chemicals, inorganic chemicals, volatile organic chemicals, and nitrate, in violation of 40 C.F.R. §§ 141.23, 141.24, and 141.31.

144. The acts or omissions referred to in Paragraphs 137-143 constitute violations of the applicable requirements under the SDWA and NPDWR.

145. Unless restrained by an order of this Court, these and similar violations are likely to continue.

146. As provided in Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), the United States is entitled to bring a claim for injunctive relief from Defendants' violations of monitoring and reporting requirements of the SDWA and NPDWR at Wyola PWS, as set forth above.

147. As provided in Section 1414 of the SDWA, 42 U.S.C. § 300g-3(g)(3)(A), violations, as set forth above, of monitoring and reporting requirements of the SDWA and NPDWR at Wyola PWS subject Defendants to civil penalties not to exceed the amount specified in Paragraph 23.

**<u>SEVENTH CLAIM FOR RELIEF</u>**
**(Failure to Address Deficiencies at the Wyola PWS)**

148. The allegations in Paragraphs 1 through 95 above are re-alleged and incorporated herein by reference.

149. As detailed in Appendix C, Defendants failed to address deficiencies at the Wyola PWS, in violation of the Ground Water Rule, 40 C.F.R. § 141.404(a).

150. The acts or omissions referred to in Paragraph 149 constitute violations of the applicable requirements under the SDWA and NPDWR.

151. Unless restrained by an order of this Court, these and similar violations are likely to continue.

152. As provided in Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b), the United States is entitled to bring a claim for injunctive relief from Defendants' violations of the Ground Water Rule at Wyola PWS.

153. As provided in Section 1414 of the SDWA, 42 U.S.C. § 300g-3(g)(3)(A), violations, as set forth above, of the Ground Water Rule at Wyola PWS subject Defendants to civil penalties not to exceed the amount specified in Paragraph 23.

**EIGHTH CLAIM FOR RELIEF**
**(Emergency Powers of Section 1431 of the SDWA)**

154. The allegations in Paragraphs 1 through 95 above are re-alleged and incorporated herein by reference.

155. The Director of EPA Region 8's Enforcement and Compliance Assurance Division, upon authority delegated by the Administrator of EPA, is in receipt of information that *E. coli,* Cryptosporidium, *Giardia*, and viruses – each a

contaminant – are present in or likely to enter the Crow Agency PWS, which may present an imminent and substantial endangerment to the health of persons who consume the drinking water from this system.

156. The Director of EPA Region 8's Enforcement and Compliance Assurance Division, upon authority delegated by the Administrator of EPA, is in receipt of information that *E. coli* – a contaminant – is present in or likely to enter the Pryor PWS and Wyola PWS, which may present an imminent and substantial endangerment to the health of persons who consume the drinking water from these systems.

157. Defendants' operation of the Crow Public Water Systems and failure to take corrective action has caused or contributed to an imminent and substantial endangerment to the health of persons who consume drinking water from these systems.

158. Among other issues, Defendants' improper operation and maintenance of the Crow Public Water Systems result in improper treatment of water provided for human consumption and cause frequent pressure losses in the distribution systems.

159. Improper operation and maintenance, including the failure to provide proper filtration of source water resulting in excess turbidity and failure to provide disinfection of water entering the distribution system, increases the chance that

drinking water may contain disease causing organisms, such as *Giardia,* Cryptosporidium, viruses and/or *E. coli*.

160. *Giardia* and viruses may be present in all surface waters, including the surface water used as source water for the Crow Agency PWS and must be treated properly prior to providing water for human consumption.

161. *E. coli* and Cryptosporidium are known to be present in the source water for the Crow Agency PWS and must be treated properly prior to providing water for human consumption.

162. *E. coli* is known to be present in the source water for the Pryor PWS and Wyola PWS and must be treated properly prior to providing water for human consumption.

163. Inadequately treated water may contain disease causing organisms. These organisms include bacteria, viruses, and parasites which can cause symptoms such as diarrhea, cramps, nausea, headaches, or other symptoms. They may pose a special health risk for infants, young children, some of the elderly, and people with severely compromised immune systems.

164. In addition to risks associated with inadequately treated water, loss of pressure in a drinking water distribution system may endanger public health because of the high potential for introduction of contaminants. Loss of pressure in a drinking water distribution system may cause a net movement of water from

outside of a pipe to the inside through cracks, breaks, or joints in the distribution system that are common in all water systems. Backsiphonage is also a condition resulting from low or no pressure. Such system failures carry a high potential for fecal contamination from *E. coli* or other disease-causing organisms to enter a distribution system.

165. *E. coli* is a type of bacteria whose presence indicates that the water may have been contaminated with human or animal wastes. Human pathogens in these wastes can cause short-term health effects, such as diarrhea, cramps, nausea, headaches, or other symptoms. They may pose a greater health risk for infants, young children, some of the elderly, and people with severely compromised immune systems.

166. In addition to the pressure loss instances resulting in emergency administrative orders referenced in Paragraphs 73, 74, and 78, since October 2023, the Crow Public Water Systems have experienced pressure losses in the distribution systems at least seven times.

167. Due to the condition of the Crow Public Water Systems, Defendants' improper operation and maintenance practices, and Defendants' failure to take corrective action, upon information and belief, unless restrained by an order of this Court, Defendants are likely to continue providing improperly treated water and the systems are likely to continue experiencing pressure losses which may present

an imminent and substantial endangerment to the health of persons who consume drinking water from these systems.

168. The Director of EPA Region 8's Enforcement and Compliance Assurance Division has determined that the relevant authorities have not acted to protect the health of persons who consume drinking water from these systems from imminent and substantial endangerments.

169. Pursuant to Section 1431(a) of the SDWA, 42 U.S.C. § 300i(a), the United States is entitled to bring a claim for injunctive relief and corrective measures.

**NINTH CLAIM FOR RELIEF**
**(Unpermitted Discharges at Crow Agency WWTF)**

170. The allegations in Paragraphs 1 through 95 above are re-alleged and incorporated herein by reference.

171. From September 15, 2015 through October 18, 2022, on a generally continuous basis, Defendants discharged pollutants, including untreated or partially treated sewage, from the outfall of the Crow Agency WWTF into waters of the United States without a NPDES permit. These discharges are not permitted or otherwise authorized by the CWA.

172. In addition to the generally continuous discharges above, on or around June 25, 2019, Defendants discharged approximately three million gallons of

partially treated sewage from the Crow Agency WWTF to waters of the United States.

173. The outfall of the Crow Agency WWTF is a "point source" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

174. The Crow Agency WWTF is a "point source" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

175. Each of Defendants' discharges from the Crow Agency WWTF constitutes a "discharge of pollutants" as defined in Section 502(12) of the CWA, 33 U.S.C. § 1362(12).

176. Each day of discharges referred to in Paragraphs 171 and 172 above constitutes a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

177. As provided in Section 309(b) of the CWA, 33 U.S.C. § 1319(b), the United States is entitled to bring a claim for injunctive relief from Defendants' violations of the CWA at the Crow Agency WWTF.

178. As provided in Section 309(d) of the CWA, 33 U.S.C. § 1319(d), violations, as set forth above, of the CWA at the Crow Agency WWTF subject Defendants to civil penalties not to exceed the amount specified in Paragraph 37.

**TENTH CLAIM FOR RELIEF**
**(Failure to Comply with CWA Administrative Order)**

179. The allegations in Paragraphs 1 through 95 are re-alleged and incorporated herein by reference.

180. On October 29, 2018, EPA issued the October 2018 Administrative Order for the Crow Agency Wastewater Lagoon pursuant to Section 309(a)(3) of the CWA, 33 U.S.C. § 1319(a)(3) to, among others, Defendant Crow Tribe and AWWWA.

181. The October 2018 Administrative Order set forth deadlines for Defendants to take specified actions necessary to achieve compliance with the CWA.

182. On numerous occasions, Defendants failed to timely comply with the October 2018 Administrative Order.

183. Defendants' failure to comply with each provision of the October 2018 Administrative Order is a violation of Section 309(a)(3) of the CWA, 33 U.S.C. § 1319(a)(3).

184. Unless restrained by an order of the Court, these and similar violations are likely to continue.

185. As provided in Section 309(b) of the CWA, 33 U.S.C. § 1319(b), the United States is entitled to bring a claim for injunctive relief from Defendants' failure to comply with the October 2018 Administrative Order.

186. As provided in Section 309(d) of the CWA, 33 U.S.C. § 1319(d), failure to comply with the October 2018 Administrative Order subjects Defendants to civil penalties not to exceed the amount specified in Paragraph 37.

**ELEVENTH CLAIM FOR RELIEF**
**(Failure to Comply with NPDES Permit at Crow Agency WWTF)**

187. The allegations in Paragraphs 1 through 95 are re-alleged and incorporated herein by reference.

188. Sections 3 and 5 of NPDES Permit No. MTG589009 for the Crow Agency WWTF include certain monitoring and reporting requirements.

189. On numerous occasions between October 19, 2022 and the present, Defendants failed to conduct the requisite monitoring and reporting, including failure to conduct all required monitoring, failure to submit required monitoring data, submitting monitoring data late, and submitting incorrect monitoring data.

190. Pursuant to Section 4.1 of NPDES Permit No. MTG589009, and as further specified in the Permit Authorization Letter, Defendants were required to develop an Industrial Waste Survey within one year of October 19, 2022, the date of issuance of coverage authorization for the Crow Agency WWTF.

191. Defendants failed to develop an Industrial Waste Survey by October 19, 2023, one year from issuance of coverage authorization for the Crow Agency WWTF and remain out of compliance with this requirement.

192. Section 6.6 of NPDES Permit No. MTG589009 states: "[t]he Permittee shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the Permittee to achieve compliance with the conditions of this Permit. Proper operation and maintenance also includes adequate laboratory controls and appropriate quality assurance procedures. This provision requires the operation of back-up or auxiliary facilities or similar systems which are installed by a Permittee only when the operation is necessary to achieve compliance with the conditions of this Permit . . . . "

193. On numerous occasions, Defendants failed to properly operate and maintain the Crow Agency WWTF in compliance with Section 6.6 of NPDES Permit No. MTG589009.

194. Each day Defendants failed to comply with the NPDES permit requirements above constitutes a separate violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342.

195. Unless restrained by an order of the Court, these and similar violations are likely to continue.

196. As provided in Section 309(b) of the CWA, 33 U.S.C. § 1319(b), the United States is entitled to bring a claim for injunctive relief from Defendants' failures to comply with NPDES Permit No. MTG589009.

197. As provided in Section 309(d) of the CWA, 33 U.S.C. § 1319(d), failures to comply with NPDES Permit No. MTG589009 subjects Defendants to civil penalties not to exceed the amount specified in Paragraph 37.

**TWELFTH CLAIM FOR RELIEF**

**(Emergency Powers of Section 504 of the CWA)**

198. The allegations in Paragraphs 1 through 95 above are re-alleged and incorporated herein by reference.

199. The Director of EPA Region 8's Enforcement and Compliance Assurance Division, with delegated authority from the Administrator of EPA, is in receipt of evidence that, on numerous occasions between 2018 to the present, Defendants have discharged untreated sewage from the Crow Agency WWTF, Pryor WWTF, and Wyola WWTF collection systems onto public and private property, including, streets, curb gutters, residential yards, ditches, roadsides, Tribal property, and Pryor Creek, where persons have or may have come into contact with such sewage.

200. Defendants' WWTFs constitute a "pollution source or combination of sources" as that phrase is used in Section 504(a) of the CWA, 33 U.S.C. § 1364(a).

201. Defendants, as the owners and/or operators of the WWTFs, are each a "person causing or contributing to the alleged pollution" from the unpermitted

discharges of untreated sewage within the meaning of Section 504(a) of the CWA, 33 U.S.C. 1364(a).

202. Discharges of untreated sewage contain pathogens, including bacteria, viruses, protozoa (parasitic organisms), helminths (intestinal worms), and inhaled molds and fungi. These pathogens may cause diseases ranging in severity from mild gastroenteritis (causing stomach cramps and diarrhea) to life-threatening ailments such as cholera, dysentery, infections, hepatitis, and severe gastroenteritis. Groups facing greater risks are children, the elderly, immunocompromised groups, and pregnant women. The endangerment from raw sewage remains imminent until the area impacted by the sewage is adequately cleaned and disinfected.

203. Upon information and belief, Defendants' discharges of untreated sewage will continue unless restrained by an order of this Court.

204. The Director of Region 8's Enforcement and Compliance Assurance Division has determined that the risk of future discharges of untreated sewage from Defendants' WWTFs presents "an imminent and substantial endangerment to the health of persons" within the meaning of Section 504(a) of the CWA, 33 U.S.C. § 1364(a).

205. Unless Defendants are ordered by this Court, pursuant to Section 504 of the CWA, 33 U.S.C. § 1364(a), to take steps to immediately cease all unpermitted discharges and to take other such action as may be necessary, upon

information and belief, such discharges will continue to present an imminent and substantial endangerment to the health of persons.

**THIRTEENTH CLAIM FOR RELIEF**
**(RCRA 7003 Endangerments)**

206. The allegations in Paragraphs 1 through 95 are re-alleged and incorporated herein by reference.

207. The Transfer Stations, owned and/or operated by Defendants, consist of open dirt areas with 40-cubic yard dumpsters designed to be transported to a sanitary landfill for disposal.

208. Upon information and belief, the levels of waste removal are insufficient to keep up with the amount of waste generated, leading to accumulating waste that results in open dumping conditions.

209. The Director of EPA Region 8's Enforcement and Compliance Assurance Division, with delegated authority from the Administrator of EPA, is in receipt of evidence showing that the areas surrounding the Transfer Stations have continued to build up with solid waste leading to open dumping conditions at and around the Transfer Stations.

210. In addition to open dumping conditions at and around the Transfer Stations, the Director of EPA Region 8's Enforcement and Compliance Assurance Division, is in receipt of evidence showing that there are at least two open dumps

on the Reservation, including Crow Agency Open Dump and Lodge Grass Open Dump.

211. The Director of EPA Region 8's Enforcement and Compliance Assurance Division is in receipt of evidence showing that open dumping conditions are still occurring at Crow Agency Open Dump and Lodge Grass Open Dump.

212. Open burning has been reported at the Lodge Grass, Wyola, Pryor, St Xavier, and Crow Agency Transfer Stations, the Crow Agency Open Dump, and the Lodge Grass Open Dump.

213. Uncontrolled waste management causes increased potential for the proliferation of disease through vectors such as rodents, flies, and mosquitoes. Open dumps also have the potential to contaminate surface water and ground water, including waters which may be sources of drinking water. Uncontrolled burning of such wastes causes air pollution, and threats of harm to persons inhaling the smoke.

214. The Director of EPA Region 8's Enforcement and Compliance Assurance Division has determined that Defendants' past or present handling, storage, treatment, transportation, or disposal of solid waste at the Transfer Stations and open dumps described above "may present an imminent and

substantial endangerment to health or the environment" within the meaning of Section 7003(a) of RCRA, 42 U.S.C. § 6973(a).

215. Defendants, as the owners and/or operators of the Transfer Stations and as the persons responsible for solid waste services on the Reservation, are each a "person" "who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal" of solid waste within the meaning of Section 7003(a) of RCRA, 42 U.S.C. § 6973(a).

216. Pursuant to Section 7003(a) of RCRA, 42 U.S.C. § 6973(a), Defendants are liable to the United States for relief, including injunctive relief, to protect the public health and the environment and to abate the threat presented by the past or present handling, storage, treatment, transportation, or disposal of solid waste.

## REQUEST FOR RELIEF

WHEREFORE, the United States of America respectfully requests that this Court grant the following relief:

1. Order Defendants to comply immediately with the statutory and regulatory requirements cited in this Complaint.
2. Order Defendants to remedy past violations by, among other things, requiring Defendants to operate the Tribal Utilities pursuant to the

requirements of the SDWA, CWA, and RCRA, and applicable requirements established thereunder.

3. Order Defendants to take all steps necessary to achieve, demonstrate, and maintain compliance with the SDWA, CWA, and RCRA, and applicable requirements established thereunder.
4. Assess civil penalties against Defendants for each of the violations alleged herein where the United States is authorized to seek such penalties.
5. Order Defendants to undertake any remedy that protection of the public health may require.
6. Award the United States its costs and disbursements in this action.
7. Grant such other and further relief as this Court deems appropriate.

Respectfully submitted,

FOR THE UNITED STATES:

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
U.S. Department of Justice

*/s/ Emily L. DeVille*

Emily L. DeVille
Mae Bowen
Trial Attorneys
Environmental Enforcement Section
Energy and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
202-598-3350
202-532-3345
Emily.DeVille@usdoj.gov
Mae.Bowen@usdoj.gov

Of Counsel:

Matthew Castelli
Senior Assistant Regional Counsel
U.S. EPA, Region 8
1595 Wynkoop Street
Denver, CO 80202