IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

CROW TRIBE OF MONTANA
AND
CROW PUBLIC UTILITIES

Defendants.

Civil No. 1:26-cv-00111-TJC

CONSENT DECREE

# TABLE OF CONTENTS


| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | 5 |
| II. | APPLICABILITY | 5 |
| III. | OBJECTIVE | 6 |
| IV. | DEFINITIONS | 7 |
| V. | CIVIL PENALTY | 11 |
| VI. | COMPLIANCE REQUIREMENTS | 13 |
| VII. | REPORTING REQUIREMENTS | 24 |
| VIII. | STIPULATED PENALTIES | 26 |
| IX. | FORCE MAJEURE | 29 |
| X. | DISPUTE RESOLUTION | 31 |
| XI. | INFORMATION COLLECTION AND RETENTION | 34 |
| XII. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 36 |
| XIII. | COSTS | 38 |
| XIV. | NOTICES | 38 |
| XV. | EFFECTIVE DATE | 39 |
| XVI. | RETENTION OF JURISDICTION | 39 |
| XVII. | MODIFICATION | 40 |
| XVIII. | TERMINATION | 40 |
| XIX. | PUBLIC PARTICIPATION | 41 |
| XX. | SIGNATORIES/SERVICE | 42 |
| XXI. | INTEGRATION | 42 |
| XXII. | HEADINGS | 43 |
| XXIII. | FINAL JUDGMENT | 43 |
| XXIV. | APPENDICES | 43 |

Plaintiff United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint concurrently with this Consent Decree against the Crow Tribe of Montana ("Tribe" or "Crow Tribe") and the Crow Public Utilities ("CPU") (collectively, "Defendants").

The Complaint against Defendants alleges claims related to drinking water, wastewater, and solid waste on the Crow Indian Reservation ("Reservation"). First, the Complaint alleges claims under Sections 1414 and 1431 of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§ 300g-3(b) and 300i, and the National Primary Drinking Water Regulations ("Drinking Water Regulations"), 40 C.F.R. Part 141, implementing the SDWA, related to the Crow Agency Public Water System ("Crow Agency PWS"), Pryor Public Water System ("Pryor PWS"), and Wyola Public Water System ("Wyola PWS") (collectively, the "Crow Public Water Systems"). Second, the Complaint alleges claims under Sections 301 and 504 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a), 1364 and the implementing regulations of the National Pollutant Discharge Elimination System ("NPDES"), 40 C.F.R. Part 122, related to the Crow Agency Wastewater Treatment Facility ("Crow Agency WWTF"), Pryor Wastewater Treatment Facility ("Pryor WWTF"), and Wyola Wastewater Treatment Facility ("Wyola WWTF") (collectively, the "Wastewater Treatment Facilities" or "WWTFs"). Third, the Complaint alleges claims under Section 7003 of the Solid Waste Disposal Act ("SWDA"), as amended by and hereafter referred to as the Resource Conservation and Recovery Act ("RCRA"), and subsequent amendments, 42 U.S.C. § 6973, related to solid waste disposal on the Reservation, including the Pryor, Wyola, St. Xavier, Lodge Grass, and Crow Agency solid waste transfer stations (collectively, the "Solid Waste Transfer Stations") and open dumps on the Reservation.

The Crow Tribe is a federally recognized Indian tribe. The Reservation is located in

southern Montana.

On April 23, 2024, the Crow Tribal Legislature amended Title 22 of the Crow Tribe Law and Order Code and established a public body known as the Crow Public Utilities ("CPU") and a regulatory agency of the Crow Tribal Executive Branch known as the Crow Environmental Protection Agency ("CEPA"). The CPU operates to, among other things, continuously provide safe and reliable drinking water, wastewater, and solid waste services within the Reservation. The CEPA operates to protect air, water, and land from pollution, including solid waste and hazardous waste dumping, and to oversee cleanup of contaminated sites. The amended Title 22, including the establishment of the CPU and CEPA, replaced the Apsáalooke Water and Waste Water Authority ("AWWWA").

The United States has reviewed the financial information submitted by the Tribe to determine whether the Tribe is financially able to pay a civil penalty. Based upon this financial information, the United States has determined that the Tribe has limited financial ability to pay a civil penalty.

Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided above and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 1414(b) and 1431(a) of the SDWA, 42 U.S.C. §§ 300g-3(b), 300i(a); Sections 309(b) and 504(a) of the CWA, 33 U.S.C. §§ 1319(b), 1364(a); and Section 7003(a) of RCRA, 42 U.S.C. § 6973(a), and over the Parties.

2. Venue lies in this District pursuant to Sections 1414(b) and 1431(a) of the SDWA, 42 U.S.C. §§ 300g-3(b) and 300i(a); Sections 309(b) and 504(a) of the CWA, 33 U.S.C. §§ 1319(b), 1364(a); and Section 7003(a) of RCRA, 42 U.S.C. § 6973(a); and 28 U.S.C. §§ 1391(b)(1)-(2) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Defendants conduct business in, this judicial district. For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants and consents to venue in this judicial district.

3. For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 1414 and 1431 of the SDWA, 42 U.S.C. §§ 300g-3(b) and 300i, and 40 C.F.R. Part 141; Sections 301, and 504 of the CWA, 33 U.S.C. §§ 1311(a), 1364 and the implementing regulations, 40 C.F.R. Part 122; and claims under Section 7003 of RCRA, 42 U.S.C. § 6973.

## II. APPLICABILITY

4. The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

5. No transfer of ownership or operation of the Facilities, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve any Defendant of its obligation to ensure that the terms of the Consent Decree are implemented. At least 30 Days prior to such transfer, Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 8 and the United States Department of Justice, in accordance with Section XIV (Notices). Any attempt to transfer ownership or operation of the Facilities without complying with this Paragraph constitutes a violation of this Consent Decree.

6. Defendants shall provide a copy of this Consent Decree to all Crow Tribe officers, employees, elected officials, representatives, agents, and other persons whose duties might reasonably include compliance, or assistance with compliance, with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7. In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, elected officials, representatives, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. OBJECTIVE

8. It is the express goal of the Parties in entering into this Consent Decree to have Defendants achieve and maintain continuous, sustainable, and long-term compliance at the Facilities with the SDWA, CWA, and RCRA, and their respective underlying regulations. All obligations under this Consent Decree shall be interpreted in a manner consistent with this goal.

## IV. DEFINITIONS

9. Terms used in this Consent Decree, including the Appendices attached hereto, that are defined in the SDWA, CWA, or RCRA or in the underlying regulations shall have the meanings assigned to them in those statutes or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

"Big Horn SWTS" means the Big Horn Solid Waste Transfer Station;

"Complaint" means the complaint filed by the United States in this action;

"Consent Decree" or "Decree" means this Decree and all appendices attached hereto;

"CWA" or "Clean Water Act" means the federal Clean Water Act, 33 U.S.C. § 1251 *et seq.*;

"Crow Agency PWS" or "Crow Agency TP02" means the Crow Agency Treatment Plant 2 Public Water System located in the town of Crow Agency, owned by the Tribe and operated by the CPU, EPA Identification Number 083090011;

"Crow Agency SWTS" means the Crow Agency Solid Waste Transfer Station;

"Crow Agency WWTF" means the Crow Agency Wastewater Treatment Facility, a Publicly Owned Treatment Works serving the community of Crow Agency, currently assigned NPDES Identification Number MTG589009 by the EPA and subject to NPDES Permit Number MTG589009;

"Crow Public Utilities" or "CPU" means the public body established under the April 23, 2024 Title 22 Ordinance (Crow Legislative Bill 24-01). For purposes of this Consent Decree, the CPU is the successor-in-interest to AWWWA and agrees to take on all prior obligations of AWWWA;

“Crow Public Water Systems” means the Crow Agency PWS, Pryor PWS, and Wyola PWS;

“Crow Tribe” or “Tribe” means Defendant Crow Tribe of Montana which is a federally recognized Indian tribe;

“Day” means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day;

“Defendants” means the Crow Tribe and the CPU;

“DOJ” means the United States Department of Justice and any of its successor departments or agencies;

“EPA” means the United States Environmental Protection Agency and any of its successor departments or agencies;

“Effective Date” means the definition provided in Section XV;

“Facilities” means the Wastewater Treatment Facilities, the Crow Public Water Systems, and the Solid Waste Transfer Stations located on the Reservation;

“Financial Information” means those financial documents and other information regarding the Tribe’s financial condition submitted by the Tribe to the United States and listed in Appendix A;

“Indirect Discharge” means the introduction of pollutants into a Publicly Owned Treatment Works from any non-domestic source regulated under Section 307(b), (c) or (d) of the CWA, as defined in 40 C.F.R. §§ 403.3(i), (j);

“Industrial User” means a source of Indirect Discharge;

"Lodge Grass SWTS" means the Lodge Grass Solid Waste Transfer Station;

"NPDES" means the National Pollutant Discharge Elimination System, 40 C.F.R. Part 122;

"NPDES Permit" means NPDES Permit Number MTG589009 issued by EPA for the Crow Agency WWTF;

"NPDWR" means the National Primary Drinking Water Regulations, 40 C.F.R. Part 141;

"Open Dump" means any facility, site, or location that is not permitted for disposal of solid waste and where Open Dumping has occurred and has not been adequately remediated, or where Open Dumping is occurring. A facility, site, or location that is permitted for disposal of solid waste may also be an Open Dump if solid waste disposal is not being conducted in compliance with solid waste handling criteria applicable to the facility, site, or location, or if such disposal is not otherwise controlled to minimize the possibility of adverse effects to human health or the environment from such solid waste handling;

"Open Dumping" means the disposal of solid waste, special waste, or hazardous waste, at any location not permitted for disposal. Dumping or discarding any type of waste into or near a body of water within the Tribe's jurisdictional boundaries is also considered Open Dumping;

"Paragraph" means a portion of this Decree identified by an Arabic numeral;

"Parties" means the United States and Defendants;

"Phase 3C Project" means the Phase 3C Wastewater Collection System Improvement Project that is intended to improve portions of the Crow Agency WWTF collection system and includes, but is not limited to, repair or replacement of deficient sewer mains and service line connections in the vicinity of Faraway Drive, Takes Gun Drive, Moccasin/Bala Street, and Two

Leggins Avenue, such that sewage is no longer inadvertently released from the collection system in any of these locations, and relocation and replacement of the East Frontage Road Lift Station;

"Pryor PWS" means the Pryor Public Water System, EPA Identification Number 083090012;

"Pryor SWTS" means the Pryor Solid Waste Transfer Station;

"Pryor WWTF" means the Pryor Wastewater Treatment Facility, a Publicly Owned Treatment Works serving the community of Pryor, currently assigned NPDES Identification Number MTU000059 by the EPA;

"Public Water System" or "PWS" means a system that provides piped drinking water for human consumption to persons within the meaning of Section 1401(4) of the SDWA, 42 U.S.C. § 300f(4), and 40 C.F.R § 141.2;

"Publicly Owned Treatment Works" or "POTW" means a treatment works as defined by Section 212 of the CWA, which is owned by a State or municipality (as defined by Section 502(4) of the CWA). This definition includes any devices and systems used in the storage, treatment, recycling and reclamation of municipal sewage or industrial wastes of a liquid nature. It also includes sewers, pipes and other conveyances only if they convey wastewater to a POTW Treatment Plant, which means that portion of the POTW which is designed to provide treatment (including recycling and reclamation) of municipal sewage and industrial waste. The term also means the municipality as defined in Section 502(4) of the CWA, which has jurisdiction over the Indirect Discharges to and the discharges from such a treatment works, 40 C.F.R. §§ 403.3(q) and (r);

"RCRA" means the federal Solid Waste Disposal Act (as amended by and also known as the "Resource Conservation and Recovery Act"), 42 U.S.C. § 6901, *et seq.*;

"Reservation" means the Crow Tribe Reservation, located in south-central Montana, bordered by the State of Wyoming to the south and the Northern Cheyenne Indian Reservation to the East, encompassing approximately 2,300,000 acres;

"SDWA" means the federal Public Health Service Act (also known as the "Safe Drinking Water Act"), 42 U.S.C. § 300f *et seq.*;

"Section" means a portion of this Decree identified by a Roman numeral;

"Solid Waste Transfer Stations" means the Pryor, Wyola, St. Xavier, Lodge Grass, and Crow Agency solid waste transfer stations;

"State" means the State of Montana;

"St. Xavier SWTS" means the St. Xavier Solid Waste Transfer Station;

"United States" means the United States of America, acting on behalf of EPA;

"Wastewater Treatment Facilities" or "WWTFs" means the Crow Agency WWTF, Pryor WWTF, and Wyola WWTF;

"Wyola PWS" means the Wyola Public Water System, EPA Identification Number 083090014;

"Wyola SWTS" means the Wyola Solid Waste Transfer Station; and

"Wyola WWTF" means the Wyola Wastewater Treatment Facility, a Publicly Owned Treatment Works serving the community of Wyola, currently assigned NPDES Identification Number MTU000096 by the EPA.

## V. CIVIL PENALTY

10. Defendants provided Financial Information, which is generally described in Appendix A, that demonstrates Defendants have a limited ability to pay a civil penalty. Within 30 Days after the Effective Date, Defendants shall pay the sum of $1,750.00 (one thousand,

seven hundred and fifty dollars) as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

11. Civil Penalty Based on Inability to Pay. The civil penalty required to be paid is based on the United States' review of Financial Information submitted by Defendant Crow Tribe and the United States' subsequent determination that Defendants have a limited ability to pay a civil penalty for the violations alleged in this case.

12. Defendants shall pay the civil penalty due, together with interest, by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Montana after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions on behalf of Defendants to:

Chairman Frank White Clay
Crow Tribe of Montana
P.O. Box 159
Crow Agency, MT 59022
(406) 638-3709
Frank.Whiteclay@crow-nsn.gov

Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change to DOJ and EPA in accordance with Section XIV (Notices).

13. At the time of payment, Defendants shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati

Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to DOJ via email or regular mail in accordance with Section XIV; and (iii) to EPA in accordance with Section XIV. Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Crow Tribe of Montana, et al.* and shall reference the civil action number, CDCS Number and DOJ case number 90-5-1-1-12359.

## VI. COMPLIANCE REQUIREMENTS

14. Defendants shall comply with all applicable requirements of Defendants' NPDES Permit, the SDWA, CWA, and RCRA, maintain required permit coverage, and comply with all appropriate implementing regulations alleged to have been violated with respect to the Facilities.

15. Defendants shall perform the work required by this Consent Decree in compliance with the requirements of all applicable federal, Tribal, and local laws, regulations and permits, including, but not limited to, any NPDES permits, the SDWA, CWA, RCRA, and all appropriate implementing regulations.

### CROW PUBLIC UTILITIES

16. Reserve Fund Account. By the Effective Date, Defendants shall establish an interest-bearing account (the "Reserve Fund Account" or "Account"), in the initial amount of $50,000, to ensure funding for CPU expenditures on drinking water, wastewater, and solid waste capital improvements or emergency situations only. Within one year of the Effective Date, Defendants shall add $50,000 to fund the Account in the amount of $100,000. Within two years of the Effective Date, Defendants shall add an additional $50,000 to fully fund the Account in the amount of $150,000. Beginning two years after the Effective Date, Defendants shall add up to $25,000 on a semi-annual basis to replenish any withdrawals until the Account is fully funded at $150,000. It shall not be a violation of this Paragraph if qualified withdrawals are made and as a

result the Account is not fully funded at $100,000 within one year of the Effective Date or $150,000 within two years of the Effective Date, as long as Defendants are adding $50,000 per year within one year and two years of the Effective Date, respectively. In each report required under Section VII, Defendants shall submit a summary describing all Reserve Fund Account activity for the previous six months, including the purpose for each withdrawal.

17. Crow Public Utilities Budget. Starting with the fiscal year 2027 budget and annually thereafter for the duration of the Consent Decree, at least 90 Days prior to the start of the Tribe's fiscal year (January 1), Defendants shall develop and submit to EPA an annual projected operating budget for the Crow Public Utilities that covers all CPU drinking water, wastewater, and solid waste activities. Defendants shall also submit a copy of the approved final CPU budget in the next report required under Section VII. The projected operating budget shall include Defendants' best estimate of its annual financial forecast needed to pay for CPU drinking water, wastewater, and solid waste activities. The annual projected budget shall include, at a minimum, line items for:

a. Funds needed for operation, maintenance, and equipment;

b. Funds needed to pay for operator/employee labor;

c. Funds needed to pay for training necessary to meet and maintain operator certification requirements, including certification exam and renewal fees, continuing education credits, study materials, operator training schools and conferences, and travel and overnight accommodations; and

d. Funds needed for vehicles, gas, and other necessities for employees to use to fulfill related job responsibilities or funds necessary for timely reimbursing operators for personal vehicle use at the federal

reimbursement rate.

18. Utilities Customer Database. Within 365 Days of the Effective Date, Defendants shall develop and maintain a Customer Database that ensures, for each PWS and WWTF, all commercial and governmental drinking water and wastewater users are accounted for. The Customer Database must include user categorization (e.g., commercial, governmental) and current customer information (e.g., name, address, and applicable user fee(s)). Defendants must update the Customer Database at least annually to reflect any changes in user categorization and customer information. Defendants shall include a status update on the completion of the Customer Database and annual updates in the relevant reports required under Section VII.

19. Utilities Initial Rates Study ("Initial Rates Study"). Defendants shall engage a third-party to conduct an Initial Rates Study (or separate studies) for considering full implementation of the drinking water, wastewater, and solid waste services and develop an Initial Rates Study Report.

a. The Initial Rates Study Report shall be completed and submitted to EPA within 30 Days of the Effective Date. At a minimum, the Initial Rates Study Report shall evaluate and make recommendations on:

(1) Current and potential target service rates and/or user fees for residential and commercial users and;

(2) Current and potential annual budgets for drinking water, wastewater, and solid waste services, respectively.

b. If the Initial Rates Study(ies) demonstrates that current drinking water, wastewater, and/or solid waste service rates and/or user fees and any additional funding received is insufficient to capture the full costs of

providing each respective service, then the Initial Rates Study Report must identify target service rates and provide specific recommendations that ensure the ability of each service to remain financially solvent, provide reliable utility service, and properly operate and maintain each facility.

20. Utilities Billing and Collection Policy. Within eighteen months of the Effective Date, Defendants shall develop and implement a Billing and Collection Policy that at a minimum, covers commercial and governmental users of drinking water and wastewater services and obtain approvals from any necessary governing bodies in the Crow Tribe's government to enact the policy. Defendants shall submit the Billing and Collection Policy to EPA in the next report required under Section VII. The Billing and Collection Policy must include:

a. Procedures to ensure timely billing and collection for implemented utility service rates, including notification of balances due and delinquent accounts for drinking water and wastewater utilities; and

b. Enforceable mechanisms for addressing delinquent accounts for implemented utility service rates.

## PUBLIC WATER SYSTEMS

21. PWS Plan of Operations. Defendants shall develop and implement a PWS Plan of Operations for the Crow Agency PWS, Wyola PWS, and Pryor PWS in accordance with the requirements and schedules in Appendix B. The PWS Plan of Operations and its components must be reviewed and updated, as necessary, at least annually. The PWS Plan of Operations and each update to the plan or any of its components, or a notification that the annual review was completed and no update is needed, shall be submitted to EPA in the relevant reports required under Section VII.

22. Crow Agency PWS Required Corrective Actions. Within 180 Days of the Effective Date, Defendants shall correct or submit a plan and schedule to EPA for review and approval for correcting all significant deficiencies identified in the December 3, 2025 Sanitary Survey Report for the September 24, 2025 Sanitary Survey of the Crow Agency PWS (including the eight new significant deficiencies identified and the six uncorrected significant deficiencies from the October 12, 2022 Sanitary Survey). An excerpt of the list of significant deficiencies and recommendations from the December 3, 2025 Sanitary Survey Report is attached as Attachment 5 to Appendix B. Documentation demonstrating completion in accordance with the requirements set forth in the December 3, 2025 Sanitary Survey Report, including a completed significant deficiency correction notice listing each individual deficiency and the date of correction and labeled photos of each correction, shall be submitted to EPA in the relevant reports required under Section VII.

23. Pryor PWS Required Corrective Actions. Within 180 Days of the Effective Date, Defendants shall correct or submit a plan and schedule to EPA for review and approval for correcting all significant deficiencies identified in the December 8, 2025 Sanitary Survey Report for the September 24, 2025 Sanitary Survey of the Pryor PWS (including the four new significant deficiencies identified and the seven uncorrected significant deficiencies from the August 30, 2016 and July 11, 2022 Sanitary Surveys). An excerpt of the list of significant deficiencies and recommendations from the December 8, 2025 Sanitary Survey Report is attached as Attachment 6 to Appendix B. Documentation demonstrating completion in accordance with the requirements set forth in the December 8, 2025 Sanitary Survey Report, including a completed significant deficiency correction notice listing each individual deficiency

and the date of correction and labeled photos of each correction, shall be submitted to EPA in the relevant reports required under Section VII.

24. Wyola PWS Required Corrective Actions. Within 180 Days of the Effective Date, Defendants shall correct or submit a plan and schedule to EPA for review and approval for correcting all significant deficiencies identified in the October 29, 2025 Sanitary Survey Report for the September 23, 2025 Sanitary Survey of the Wyola PWS (including the seven new significant deficiencies identified and the three uncorrected significant deficiencies from the August 31, 2016 and July 11, 2022 Sanitary Surveys). An excerpt of the list of significant deficiencies and recommendations from the December 8, 2025 Sanitary Survey Report is attached as Attachment 7 to Appendix B. Documentation demonstrating completion in accordance with the requirements set forth in the October 29, 2025 Sanitary Survey Report, including a completed significant deficiency correction notice listing each individual deficiency and the date of correction and labeled photos of each correction, shall be submitted to EPA in the relevant reports required under Section VII.

25. Public Notices. Defendants shall submit public notices for all outstanding significant deficiency violations identified in Paragraphs 22-24 on a quarterly basis as long as the violations persist and shall submit documentation of the notices to EPA in the relevant reports required under Section VII.

26. Public Water System Sampling and Reporting - Crow Agency PWS.

a. Beginning 30 Days after the Effective Date, Defendants shall provide the Monthly Operating Reports ("MORs") for Crow Agency TP02 to EPA by the 10th Day of the month following each monthly monitoring period.

b. Beginning 180 Days after the Effective Date, Defendants shall provide filter effluent turbidity results recorded at a minimum frequency of once every 15 minutes for a three-year period or demonstrate that Supervisory Control and Data Acquisition ("SCADA") system modifications have been completed so that it can store and export three years of turbidity data.

**WASTEWATER TREATMENT FACILITIES**

27. Required Corrective Actions. Within 365 Days of the Effective Date, Defendants shall complete all corrective actions pertaining to Findings 4-7, 9, 10, 12, and 13 in EPA's October 31, 2023 Report for the August 9, 2022 inspection of the Crow Agency WWTF. An excerpt of the findings, corrective actions, and recommendations from the October 31, 2023 Report is attached as Attachment 1 to Appendix C. Defendants shall submit documentation demonstrating completion to EPA in the relevant report required under Section VII.

28. Phase 3C Project. Defendants shall complete the following minimum elements of the Phase 3C Project by September 1, 2027, and shall submit documentation demonstrating completion to EPA in the relevant report required under Section VII:

a. Relocation and replacement of the East Frontage Road Lift Station;

b. Improvements to deficient sewer mains and service line connections in the vicinity of Faraway Drive, including cessation of the suspected sanitary sewer overflow originating in this area;

c. Improvements to deficient sewer mains and service line connections in the vicinity of Takes Gun Drive, including repair of offset sewer main in this area; and

d. Improvements to deficient sewer mains and service line connections in

the vicinity of Two Leggins Avenue and Moccasin/Bala Street, including appropriate isolation of the suspected uncapped service connection, cleanout, or manhole west of the intersection of Two Leggins Avenue and Moccasin/Bala Street and cessation of the suspected sanitary sewer overflow at this location.

29. Wyola Lift Station Improvements. Defendants shall complete the Indian Health Service ("IHS") supported Wyola lift station improvement project (IHS Project Number: BI20P08) by December 31, 2026. Defendants shall submit documentation demonstrating completion to EPA in the next report required under Section VII.

30. Industrial Waste Management. Within 180 days of the Effective Date, Defendants shall develop, and submit to EPA for review, an Industrial Waste Survey for the Crow Agency WWTF conducted in accordance with the requirements of Section 4.1 of the NPDES Permit and accompanying October 19, 2022 authorization letter, including onsite Industrial User inspections of, at a minimum, the Awe Kualawaache Care Center and the Indian Health Service Crow/Northern Cheyenne Hospital. During these Industrial User inspections, Defendants shall evaluate waste streams entering the sewer system and meet with Industrial User management to discuss any issues impacting the sewer system that could potentially be related to service of these Industrial Users and the importance of preventing industrial solids, including disposable rags and towels, and other waste, from entering the collection system and interfering with wastewater collection, pumping, and treatment operations. Defendants shall also comply with the Industrial Waste Management requirements of Section 6.11 of the NPDES Permit and any similar requirements applicable in subsequent NPDES permits or federal regulations.

31. WWTF Plan of Operations. Defendants shall develop and implement a WWTF Plan of Operations for the Crow Agency, Pryor, and Wyola WWTFs in accordance with the requirements and schedules in Appendix C. The WWTF Plan of Operations and its components must be reviewed and updated, if necessary, at least annually. The WWTF Plan and any updates to the WWTF Plan of Operations or any of its components, or a notification that the annual review was completed and no update is needed, shall be submitted to EPA in the relevant reports required under Section VII.

32. WWTF Operation and Maintenance Manual ("WWTF O&M Manual"). Defendants shall develop and implement an O&M Manual for each WWTF in accordance with the requirements and schedules in Appendix C. The O&M Manual must detail procedures for safe and reliable WWTF operation and maintenance at the Crow Agency, Pryor, and Wyola WWTFs consistent with applicable CWA and NPDES permit requirements and adequate protection of human health and the environment. The WWTF O&M Manual and its components must be reviewed and updated, if necessary, at least annually. The WWTF O&M Manual and any updates to the WWTF O&M Manual or any of its components, or a notification that the annual review was completed and no update is needed, shall be submitted to EPA in the relevant reports required under Section VII.

33. Emergency Response Plan. Within 365 Days of the Effective Date, Defendants shall develop and implement separate or combined Emergency Response Plan(s) for each of the WWTFs. The Emergency Response Plan(s) for the WWTFs must be reviewed and updated, if necessary, annually. The Emergency Response Plan and any updates to the Emergency Response Plan(s) for each WWTF, or a notification that the annual review was completed and no update is

needed, shall be submitted to EPA for review and approval in the relevant reports required under Section VII.

## SOLID WASTE PROGRAM AND FACILITIES

34. Integrated Solid Waste Management Plan ("ISWMP"). Defendants shall develop and implement an ISWMP in accordance with the requirements and schedules in Appendix D.

35. Investigation Plans, Investigation Reports, and Remediation Plans. Defendants shall develop and implement Investigation Plans, Investigation Reports, and Remediation Plans in accordance with the requirements and schedules in Appendix D.

36. Community Education and Outreach Plan. Within 180 Days of the Effective Date, Defendants shall develop a Community Education and Outreach Plan that describes barriers to proper solid waste handling by the community and proposes initial education and outreach materials and communication plans. Initial education and outreach plans must be designed to effectively communicate: the hazards from open dumping and burning; sound solid waste recycling and disposal practices; information to the community on resources available for proper disposal; and presently existing locations for proper solid waste drop off, recycling, and disposal. Longer term education and outreach materials and efforts must be developed based on experience with the effectiveness of early outreach efforts. The Community Education and Outreach Plan, and any updates, must be submitted to EPA for review in the relevant reports required under Section VII.

## GENERAL COMPLIANCE REQUIREMENTS

37. Approval of Deliverables. After review of any plan, report, or other item that is required to be submitted for approval pursuant to this Consent Decree, EPA will in writing:

a. approve the submission;

b. approve the submission upon specified conditions;

c. approve part of the submission and disapprove the remainder; or

d. disapprove the submission.

38. If the submission is approved pursuant to Paragraph 37.a., Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraphs 37.b. or c., Defendants shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions.

39. If the submission is disapproved in whole or in part pursuant to Paragraph 37.c. or d., Defendants shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with Paragraph 38.

40. If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies.

41. If Defendants elect to invoke Dispute Resolution as set forth in Section X (Dispute Resolution) concerning a decision by EPA to disapprove, approve on specified conditions, or modify a deliverable, Defendants shall do so by sending a Notice of Dispute in accordance with Paragraph 69 within 30 Days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

42. Any stipulated penalties applicable to a timely original submission, as provided in Section VIII, accrue during the 45 Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

43. Permits. Where any compliance obligation under this Section requires Defendants to obtain a federal, Tribal, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section IX (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

## VII. REPORTING REQUIREMENTS

44. Defendants shall submit the following reports to EPA at the addresses set forth in Section XIV (Notices):

a. Semi-Annual Reports. By July 31st and January 31st of each year after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XVIII, Defendants shall submit by email a semi-annual report for the preceding six months (i.e., January through June or July through December) that includes Defendants' progress in implementing the requirements set forth in Section VI (Compliance Requirements) including, but not limited to the items listed in Appendices B-D of this

Consent Decree, and any problems encountered or anticipated, together with implemented or proposed solutions.

b. The report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and the remedial steps taken, or to be taken, to prevent or minimize such violation. If Defendants violate, or have reason to believe that they may violate, any requirement of this Consent Decree, Defendants shall notify DOJ and EPA of such violation and its likely duration, in writing, within ten business days of the Day Defendants first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report. Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendants become aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendants of its obligation to provide the notice required by Section IX (Force Majeure).

45. Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendants' performance under this Decree may pose an imminent threat to the public health or welfare or the environment, Defendants shall notify EPA by email as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event. This procedure is in addition to the requirements set forth in the Paragraph 44.

46. Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

47. The certification requirement in Paragraph 46 does not apply to emergency or similar notifications where compliance would be impractical.

48. The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the CWA, SDWA, and RCRA or implementing regulations, or by any other federal, Tribal, or local law, regulation, permit, or other requirement.

49. Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII. STIPULATED PENALTIES

50. Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

51. Late Payment of Civil Penalty. If Defendants fail to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $50 per Day for each Day that the payment is late.

52. Penalty Amounts. The following stipulated penalties shall accrue per violation per Day for each violation of a requirement in Section VI (Compliance Requirements), Section VII (Reporting Requirements), or any requirement of the NPDES Permit, including the failure to timely submit electronic discharge monitoring reports ("DMRs"):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $50 | 1st through 14th Day |
| $100 | 15th through 30th Day |
| $200 | 31st Day and beyond |

53. Transfer of Ownership. If Defendants fail to: (a) provide a copy of this Consent Decree to any proposed transferee; (b) provide written notice to the United States at least 30 Days prior to any transfer of any portion of the Facility; or (c) provide a copy of the proposed written agreement with the transferee as required by Paragraph 5, Defendants shall pay a stipulated penalty of $1,500 per occurrence.

54. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

55. Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

56. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

57. Stipulated penalties shall continue to accrue as provided in Paragraph 54, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c. If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

58. Defendants shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 12 and with the confirmation notices required by Paragraph 13, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

59. If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

60. The payment of penalties and interest, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

61. Non-Exclusivity of Remedy. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendants' violation of this Decree or applicable law, including but not limited to an action against Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX. FORCE MAJEURE

62. "Force majeure," for purposes of this Consent Decree, means any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. Given the need to protect public health and welfare and the environment, the requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure, such that any delay or non-performance is, and any adverse effects of the delay or non-performance are, minimized to the greatest extent possible. "Force majeure" does not include financial inability to perform any obligation under this Consent Decree.

63. If any event occurs for which Defendants will or may claim a force majeure, Defendants shall provide notice by email to EPA. The deadline for the initial notice is three days after Defendants first knew or should have known that the event would likely delay or prevent

performance. Defendants shall be deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by Defendants knew or should have known.

64. If Defendants seek to assert a claim of force majeure concerning the event, within seven Days after the notice under Paragraph 63, Defendants shall submit a further notice to EPA that includes (a) an explanation and description of the event and its effect on Defendants' completion of the requirements of the Consent Decree; (b) a description and schedule of all actions taken or to be taken to prevent or minimize the delay and/or other adverse effects of the event; (c) if applicable, the proposed extension of time for Defendants to complete the requirements of the Consent Decree; (d) Defendants' rationale for attributing such delay to a force majeure; (e) a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health or welfare or the environment; and (f) all available proof supporting the claim that the delay was attributable to a force majeure.

65. Failure to submit a timely or complete notice or claim under Paragraph 63 or 64 regarding an event precludes Defendants from asserting any claim of force majeure regarding that event, provided, however, that EPA may, in its unreviewable discretion, excuse such failure if it is able to assess to its satisfaction whether the event is a force majeure, and whether Defendants have exercised their best efforts, under Paragraph 62.

66. After receipt of any claim of force majeure, EPA will notify Defendants of its determination whether Defendants are entitled to relief under Paragraph 62, and, if so, the excuse of, or the extension of time for, performance of the obligations affected by the force majeure. An excuse of, or extension of the time for, performance of the obligations affected by the force majeure does not, of itself, excuse or extend the time for performance of any other obligation.

67. If Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), they shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendants have the burden of proving that they are entitled to relief under Paragraph 62, that their proposed excuse or extension was or will be warranted under the circumstances, and that they complied with the requirements of Paragraphs 62 - 64. If Defendants carry this burden, the delay or non-performance at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## X. DISPUTE RESOLUTION

68. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section concerning an issue of which they had notice and an opportunity to dispute under this Section prior to an action by the United States to enforce any obligation of Defendants arising under this Decree precludes Defendants from raising any such issue as a defense to any such enforcement action.

69. Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send DOJ and EPA a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 60 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after

the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

70. Formal Dispute Resolution. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the Paragraph 69, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

71. The United States will send Defendants its Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position is binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with Paragraph 72.

72. Judicial Dispute Resolution. Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute. The motion (a) must be filed within ten Days of receipt of the United States' Statement of Position pursuant to the Paragraph 71; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 68, unless the United States raises a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation; and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

73. The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

74. Standard of Review.

a. Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 70 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules, or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 70, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and better furthers the Objectives of the Consent Decree.

75. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 57. If

Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

76. The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any location or facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a. monitor the progress of activities required under this Consent Decree;

b. verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c. obtain samples and, upon request, splits of any samples taken by Defendants or their representatives, contractors, or consultants;

d. obtain documentary evidence, including photographs and similar data; and

e. assess Defendants' compliance with this Consent Decree.

77. Upon request, Defendants shall provide EPA or its authorized representatives splits of any samples taken by Defendants. Upon request, EPA shall provide Defendants splits of any samples taken by EPA.

78. Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of their obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or

procedures. At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

79. At the conclusion of the information-retention period provided in Paragraph 78, Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of Paragraph 76 and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA. Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendants assert such a privilege, they shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

80. Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

81. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to

maintain documents, records, or other information imposed by applicable federal, tribal, or local laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

82. This Consent Decree resolves only the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging of this Consent Decree.

83. The United States' agreement to the amount of the civil penalty required by Paragraph 10 of this Consent Decree is based on the Financial Information identified in Appendix A. Defendants certify that, to the best of their knowledge and belief, after thorough inquiry, they have submitted to EPA and DOJ financial information that fairly, accurately, and materially sets forth their financial circumstances, and that those circumstances have not materially changed between the time Defendants submitted the financial information and the time Defendants execute this Consent Decree.

84. The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the SDWA, CWA, RCRA, or their implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 82. The United States further reserves all legal and equitable remedies to address any conditions if there is or may be an imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendants' Facilities or Open Dumps, whether related to the violations addressed in this Consent Decree or otherwise.

85. The United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information, or the financial certification made by Defendants in Paragraph 83, is false or, in any material respect, inaccurate.

86. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facilities, Open Dumps, or Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 82.

87. This Consent Decree is not a permit, or a modification of any permit, under any federal, tribal, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, tribal, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the SDWA, CWA, or RCRA, or with any other provisions of federal, or local laws, regulations, or permits.

88. This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the

rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

89. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII. COSTS

90. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XIV. NOTICES

91. Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email, with a preference for email, addressed as follows:

| | |
|---|---|
| As to DOJ by email (preferred): | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-1-1-12359 |
| As to DOJ by mail: | EES Case Management Unit<br>ENRD<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Re: DJ # 90-5-1-1-12359 |
| As to EPA by email (preferred): | castelli.matthew@epa.gov |
| As to EPA by mail: | Matthew Castelli<br>Office of Regional Counsel<br>8ORC-LE-R<br>1595 Wynkoop Street<br>Denver, CO 80202 |
| As to the Crow Tribe by email (preferred): | Frank.Whiteclay@crow-nsn.gov |

As to the Crow Tribe by mail: Chairman Frank White Clay
Crow Tribe of Montana
P.O. Box 159
Crow Agency, MT 59022
RE: EPA Consent Decree

As to the CPU by email (preferred): brandon_goodluck@yahoo.com
laura@ctlb.org
Johndoyle91@gmail.com
Re: EPA Consent Decree

As to the CPU by mail: Natural Resource Committee Chair
Crow Legislative Branch
P.O. Box 309
Crow Agency, MT 59022
RE: EPA Consent Decree

92. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

93. Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV. EFFECTIVE DATE

94. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI. RETENTION OF JURISDICTION

95. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII. MODIFICATION

96. Except as otherwise set forth in Appendices A-D, the terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court. Any change to a schedule or deadline in this Consent Decree of less than one year shall not be considered a material change.

97. Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 74, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

98. After Defendants have completed the requirements of Section VI (Compliance Requirements), have maintained satisfactory compliance with this Consent Decree and Defendants' permit for a period of three years, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

99. Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Consent Decree may be

terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

100. If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X. However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 30 Days after service of its Request for Termination.

101. At any time, if the United States has sufficient information to determine that Defendants have met the requirements for termination under Paragraph 98, the United States, after notice to Defendants, may file a motion to terminate the Decree. If the parties are in agreement, a joint stipulation of termination may be filed with the Court.

102. If the United States does not have sufficient information to determine whether Defendants have met the requirements of termination under Paragraph 98, the United States may request additional information from Defendants, as permitted in Section XI (Information Collection and Retention), which Defendants shall provide within 30 Days of receiving the United States' request.

## XIX. PUBLIC PARTICIPATION

103. This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. This Consent Decree is also subject to the opportunity for a public meeting in the affected area requirement in accordance with RCRA Section 7003(d), 42 U.S.C. § 6973(d). The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice and agree

not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XX. SIGNATORIES/SERVICE

104. Each undersigned representative of Defendants and the Principal Deputy Assistant Attorney General for ENRD of the Department of Justice identified on the DOJ signature page below, certifies that that person is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party that person represents to this document.

105. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendants need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI. INTEGRATION

106. This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, concerning the subject matter of the Decree herein.

## XXII. HEADINGS

107. Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXIII. FINAL JUDGMENT

108. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.

## XXIV. APPENDICES

109. The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the Financial Information;

"Appendix B" is the Public Water Systems Compliance Requirements;

"Appendix C" is the Wastewater Treatment Facilities Compliance Requirements; and

"Appendix D" is the Solid Waste Compliance Requirements.

Dated and entered this __ day of __________, 20__

___________________________________
UNITED STATES DISTRICT JUDGE

Signature Page for *United States v. Crow Tribe of Montana et al.* Consent Decree

FOR THE UNITED STATES OF AMERICA:

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
U.S. Department of Justice

9/4/2026
Date

E DeVille
EMILY L. DEVILLE
MAE BOWEN
Environmental Enforcement Section
Energy and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611

Signature Page for *United States v. Crow Tribe of Montana et al.* Consent Decree

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 8:

7/13/26
Date

CYRUS WESTERN
Regional Administrator
U.S. Environmental Protection Agency, Region 8

7/9/2026
Date

KENNETH C. SCHEFSKI
Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 8

7/13/2026
Date

SUZANNE J. BOHAN
Director
Enforcement and Compliance Assurance Division
U.S. Environmental Protection Agency, Region 8

7/9/2026
Date

MATTHEW CASTELLI
Senior Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 8

Signature Page for *United States v. Crow Tribe of Montana et al.* Consent Decree

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

JEFFREY A. HALL
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue
Washington, D.C. 20460

7/13/2026
Date

Cecil Rodrigues
CECIL RODRIGUES
Deputy Assistant Administrator for Management
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue
Washington, D.C. 20460

Signature Page for *United States v. Crow Tribe of Montana et al.* Consent Decree

FOR DEFENDANTS:

11-3-26
Date

Frank White Clay
Chairman
Crow Tribe of Montana

11/3/26
Date

Lawrence DeCrane
Vice-Chairman
Crow Tribe of Montana

10/30/26
Date

Levi Black Eagle
Secretary
Crow Tribe of Montana

10/30/26
Date

Channis D. Whiteman
Vice-Secretary
Crow Tribe of Montana

10/30/26
Date

John Doyle
Chair, Crow Public Utilities Board
Crow Public Utilities